Go ahead. May it please the Court, this case concerns allegations of so-called twisting or convincing purchasers of life insurance to trade in their old life insurance for a new life insurance policy. Plaintiff appellant has alleged that the Reg 60 disclosures and that the policy illustrations provided to him at the time of his purchase concealed certain material facts that… If you get to the merits, there's some procedural hurdles here. And that is the timing of the filing of the motion for reconsideration and the adherence to the district judge's bundling rules, which meant that the filing was not in compliance with the Federal rules. Can you address that? Yes, Your Honor. Defendant Apelli has argued that by following the district court's bundling rule and waiting until the material, the matter was fully briefed in order to file it, e-file it with the court, necessarily violated FRCP 4A. Plaintiff Apelli argues that the new version of the FRCP 4 is designed such that so long as plaintiff complies with the local and district court's rules, that this automatically forms a compliance with Rule 4A. Why don't you understand how you get that, frankly? The rules are pretty clear about the timing for filing a notice of appeals, a motion for reconsideration. And it's filing. It's not serving on the other side. And so the bundling is a convenient management tool for the district court. But certainly this district judge, and I understand this throughout the Eastern District, the bundling rules are always subject to the Federal rules. And so why don't we just look at the bundling rules may, in other cases, could be misleading because they lead to a late filing of the motion for reconsideration or notice of appeal. But here we don't even have that because the district judge's bundling rules make very clear that the rules, the Federal rules, predominate if there's a conflict. Yes, Your Honor. However, the rules don't require that there be a conflict between these rules. That the argument that there is implicitly — You're saying there's no conflict? I believe that the language — You said that the amendment somehow made it clear that there is no conflict.  The pre-4 amendment, Rule 4A, 4A, said if a party timely files. Now it says it has to file within the time allowed by the Federal rules of civil procedure. So doesn't that make it more clear that we look to the Federal rules and not to the local rules of the district judge? First, Your Honor, we would argue that the local rules are incorporated in the Federal rules as the district judges are allowed to pass their local rules. Yeah, but the district judges are allowed to pass local rules that don't conflict with the Federal rules. The authorization is limited by the Federal rules. And so to the extent that it's extending the deadline that the Federal rules don't allow, that rule would be invalid. Yes, Your Honor. I agree that to the extent that it seeks to extend the deadline in a manner that the Federal rules, it wouldn't be allowed. However, we argue that Federal Rule 4, FRCPA 4, as defined, says that the rule must be made. And one of the issues before this Court is whether or not that means — whether made indicates that notice is given to the opposing party. You mean you think that the rules delegate the authority of the Federal imprimatur to the district — to the district judge so that the public rules all of a sudden become Federal rules? Yes, Your Honor. Because if, in fact, the Federal rule of appellate procedure seeks guidance from the district court rules and the district court rules encompass the — excuse me — the local rules, then we argue that the local rules automatically follow the FRCPA and that there is no need to interpret the FRCPA in a manner that causes this conflict. And we believe that focusing on the issue, particularly whereby the 1995 advisory committee notes make it very clear that the — a motion is made for purposes of FRCPA 4 when it is noticed and that that is exactly what plaintiff appellant did in this context. I guess two things. One is, you know, the advisory committee notes in 2016 said that the amendment was to make clear that even if a district court extended the deadline or if there was no objection to a late deadline, that the Federal rules control, right? And the amendment — sorry, and the rule itself says if a party files in the district court, it doesn't say made. So I guess two things. One is, didn't the advisory committee make clear in 2016 that the amendment was meant to say that we don't look to when a district court extends the deadline? And two, didn't we say in Whitesnare that when the rules say files, it means actually filed? It doesn't mean served on the opposing party. I think that the language of extending the deadline is a misnomer in this context. I think that, for example, the law in Nutraceutical discusses requesting a deadline extension, and there is certainly law before this Court concerning actual requests of deadline extension. We argue that that is not the case here, because rather than requesting any type of special dispensation, plaintiff appellants followed the local and district court rules to the letter. And the other thing is you're saying that your client didn't actually miss the deadline, that actually nobody wanted an extension, the deadline wasn't extended, and he served it within the time. He just didn't file it on the docket. And to be clear, Your Honor — The deadline doesn't apply to when it's filed. The deadline doesn't apply to when it's served or written. Like if I write up a motion and keep it in my desk, you know, even if I've written it in advance of the deadline, it's not — it doesn't meet the deadline unless I do the thing that the rules require and it says files. Well, for the purpose of notice, Your Honor, plaintiff appellant did file the notice with the court that they had served Defendant Tappelli at the time that they made the service. So the court was certain that — In Weitzner, we, you know, reserve judgment on whether maybe that would be enough to say that it was filed. But how could that be? I mean, if you just file a letter saying that you served it on the opposing party, you haven't actually filed the motion. So what would be the logic of saying that would be sufficient? Because, Your Honor, the question is the prejudice that the opposing party would face, whether there would be any prejudice. I think that in circumstances whereby there is a specific time delineation involved — I think that's the word, nutraceutical, is very instructive — then the rules are set a specific number of days because they're designed to protect the other party, whereas in circumstances like this, whereby there is a built-in flexibility to it, the notice makes it such that the other party doesn't really suffer any prejudice. Sir, what's the built-in flexibility? What has a built-in flexibility? I'm arguing, Your Honor, that nutraceutical sets two types, essentially. You're saying this is not a mandatory rule. Yes, Your Honor. So that there — but that doesn't mean that it has a flexible deadline. It means that it would be subject to equitable exceptions, right? Yes, Your Honor. And we're arguing for the Court that we're hoping that the full intention of following all the local and district rules would be a circumstance whereby an equitable exception might be required. Yeah, but what if you have an equitable exception? I mean, even assuming that it's available, like, you have to show that your client was diligent in pursuing the relief and that there was some kind of extraordinary circumstances that prevented compliance with the deadline, right? But nothing really prevented him from filing the motion at the time. The district court wasn't misleading him. The rules say in bold letters that, you know, you can't — you shouldn't comply with the bundling rules if you're going to miss a deadline, right? Yes, Your Honor. So the parties are reminded that the Court of Appeals will not accept an argument that compliance with district court motion rules should excuse noncompliance when the time limit is set forth in Federal Rule of Appellate Procedure 4. That's right in the local rules. Yes, Your Honor. That argument sort of implies that there necessarily is a disharmony between the Federal rules and the appellate rules, such that in the case of such a disharmony, the Federal rules, the appellate rules should govern. However, Plaintiff Appellate argues that there's no reason for there to be a conflict between the appellate rules and the district rules in this context.  So now you're not arguing for an equitable exception. Now you're making this other argument that actually there's no conflict between the two, that it was timely filed. I'm making two arguments. I apologize. You're allowed to make arguments of the alternative. I understand that. But so the argument would be that it was timely filed, and even if it wasn't timely filed, there should be an equitable exception. And the thing that prevented him from this extraordinary circumstances that prevented him from filing it was what? This theory that he thought that actually there wasn't a conflict. Well, I believe that because the law currently is that there is no conflict, of course, this Court will determine it. But I believe that the law should be such that there is no conflict, such that in this particular circumstance, the following of the judge's rules wouldn't fit under this warning circumstance that Your Honor is referencing to, where if there is a conflict, the appellate rules would prevail. It's a bit of a chicken-egg problem, I recognize. But that is... Okay. So even if we're on that second argument about the equitable exceptions, if in fact the rules tell you you shouldn't do the bungling if you're going to miss a deadline under federal rules of appellate procedure, then how can that be an extraordinary circumstance that prevented him from paying attention to that deadline? Again, it's a bit of a chicken-egg problem, whereby if the law is such that there is a conflict, then this would create a problem. We would argue, first, that there is no conflict, and secondly, that this argument has been fully briefed before the Court, and so the Court is well aware that there are no four-corner cases addressing this issue, that the notion that the plaintiff should have known that the bungling rule implicitly puts him in conflict with the new Rule 4a has never been litigated. You know, the only relevant law is Weitzman, which predates the new rule. And so we argue that plaintiff appellate's interpretation was quite reasonable, and should the Court hold that the law is different than that would be the case? I get that argument. Maybe we can talk about the other issues. So you say that what was misleading in your case was the upfront premium charge, the monthly charges, and the growth cap rate, right? I think this is very important. The district court thought that this was disclosed on the annual statements, so why don't you explain why that is? Yes, Your Honor, I think this is a really important issue, because I think that what we argue is actually misleading has been recast by the district court and the defendants, and then that recasting of plaintiff's allegations has been used against them. So the specific forms of harm that a plaintiff is alleging is that, for example, he learned, this is paragraph 76, A35 in the appendix, that the contestability and suicide clauses in his contract had expired. He learned that the replacement value of his new policy may possibly terminate without value. He learned that the non-guaranteed elements of his policy were, in fact, guaranteed. Neither the defendants nor the district court argue that any of that information could possibly have been determined by the annual statements or that the annual statements would have accrued him as to such stories. Instead, Your Honor, it seems like the paragraphs in plaintiff's complaints have been twisted a little bit. For example, the main issue appears to rely on paragraph 42, which says, in this letter, defendant Feigenbaum agreed that the interest rate or crediting rate that could be earned by the policy would be 12 percent per annum. And so plaintiff never alleged that he was guaranteed a 12 percent per annum return. He said that he heard that it could happen. But yet this, when it reaches the decision, it gets twisted around into a promise of a 12 percent return. And so logically, when he doesn't receive this 12 percent return, if he was promised it, why didn't he notice? And the answer is because he wasn't promised it. Because he doesn't allege that he was promised it. He was told that it could happen. And so the mere occurrence of something that he was told, the mere non-occurrence of something that he was told could happen isn't a violation of the act. And he only learned that later when the other disclosures came out? Is that clear? Well, he was learning that something could happen, and then when the annual statements came out, he learned that it didn't happen. But none of that proves that it could not have happened. Right. So you're saying the impossibility of it wasn't revealed until the revised disclosure? Yes, Your Honor. And also I would emphasize that the What? What's in the revised disclosure? It's because it indicates that the manner in which the crediting rate was calculated wasn't what he was told. And this is an area, again, where the district court confuses the issue. That the district court focuses on the growth cap rate and that he was told that the growth cap rate was diminished. But the growth cap rate is not the formula that determines what he's supposed to be paid. That's the crediting rate. The growth cap rate is just the top end of the potential return that he could get. And so him being told that the growth cap rate was being set differently, while it does say that he was disappointed that what could happen didn't happen, it doesn't actually inform him that he was lied to in the first instance. This also comes with regards to plaintiff's allegations that the fees that he was told about initially weren't sufficiently detailed. So, for example, paragraph 60 says, quote, summary results page of the disclosure statement that Mr. Malk received was misleading in that, in regard to policy premiums, it stated policy has flexible premiums rather than explicitly disclosing the placement policy had a 6 to 8 percent premium. Now, that argues that it was insufficiently just specific in describing the nature of these fees, not that it argues he would have no fees, such that when he saw the math in the subsequent statement, he, you know, you said you'd say no fees, I have fees. Clearly, he should have known something. But that isn't what plaintiff has alleged. Plaintiff has alleged that there was a nonspecificity in what he was told. And the nonspecificity is what led him to rely on representations that he was getting a better deal, and he didn't realize that he was not until the revised disclosures. Yes, Your Honor. Okay. I think we have that argument. We reserve some time. Unless there's more questions. We reserve some time for rebuttal until we'll hear from you again. Let's turn to the first appellee, Mr. First. Your Honor, it's Jay Kastner. Oh, sorry. On my list, I have First and then Kastner. But if you'd like to go first, that's fine. Okay. Mr. Kastner. Thank you, Your Honor. I appreciate it. Good morning, Your Honors. Jay Kastner from Skadden Arps, along with my partner, Kurt Hemmer, on behalf of Equitable. Your Honors, there are a number of things that were said towards the end in response to Judge Menasche's questions about what's in the complaint, the merits of what Judge Gujarati did in dismissing the complaint, the applicable standard of review that would apply to that determination if Your Honors were to conclude that this untimely appeal somehow morphed into a timely appeal, if Your Honors concluded that the notice of appeal and the papers that were submitted by my friend on the other side actually put at issue a reconsideration motion, which it did not, and the standard of review that would apply to that, which is nowhere addressed in my friend's papers. But I'd like to start with what's dispositive here, if I may, and that is the question of whether the appeal is timely and whether or not the appeal adequately notices an appeal from Judge Gujarati's decision not to grant reconsideration. The facts here, thankfully, are undisputed insofar as the timeline is concerned. It's undisputed that the motion for reconsideration under Rule 59, and I would note that counsel for Mr. Malik has agreed that the applicable standard here is Rule 59, requires that the motion be, quote, filed within 28 days. That didn't happen. So can I ask about that? So if the motion wasn't filed within 28 days, then you could have objected that it was untimely filed even before the district court, right? So if you had done that, I mean, Rule 6 says the district court's not even allowed to extend the deadline for Rule 59 e-motions, right? So could you have objected to the timeliness of the Rule 59 e-motion before the district court and prevented the district court from considering it? No. The answer is no, Your Honor. Judge LaValle squarely addressed that argument, which my friend from Mr. Malik also advances here. In the face of controlling authority from Judge LaValle in the opinion in Weitzman, the answer is no. There are two different time frames, Your Honors, that we're talking about. Yeah, but Weitzman was about a Rule 60 motion, right? And that's one where the deadline was different under the Federal Rules of Civil Procedure and the Federal Rules of Appellate Procedure. There was a different deadline for it to be considered by the district court than there was to extend the time to appeal. So that's why there was a disjunction. But for Rule 59 e-motions, that's not true, right? So Rule 59 e-motions, the Federal Rules of Appellate Procedure looked at the deadline that's in the Federal Rules of Civil Procedure, and Rule 6 says that the district court is not allowed to extend the deadline. Both of that is correct. Where I think the conclusion, Your Honor, is drawing is, with respect, incorrect, is the motion to reconsider under Rule 59 pains me to say this as an advocate, but I will concede that Mr. Malik did timely file a motion for reconsideration before Judge Gujarati under Rule 59. It said you have to file that within 28 days. Excuse me. Excuse me. I take that back. He served it within 28 days under the bargaining rules. He served it within 28 days, but he did not file it within 28 days. That is correct, Your Honor. My apologies. You're absolutely right. If the Federal Rules say it needs to be filed within 28 days, doesn't that mean it was late even for the district court's purposes? Your Honor, the issue that we're addressing now is whether we waived our rights with respect to objecting to the notice of appeal. Maybe it's subject to waiver, but I'm trying to play out the implications of your argument. So, yes, so in this particular case, you did not object to the timeliness of maybe you made compliance with the deadline, but I'm saying, I mean, the implication of your argument is if you had objected to the timeliness of the 59e motion before the district court, the district court couldn't even have considered it. Right? So, counsel, I'll point you to Rule 6b-2, which is what Judge Menachie is referring to, and it says the court must not extend the time to act. It does not say file, but it says act under Rules 59e amongst the other rules that are identified. What's your argument as to whether that governed any obligation on your part to have objected to the late filing versus the timely service of the motion for reconsideration? Your Honor, I think the bundling rule that Judge Gujarati articulated would apply to appellate rights, and I think that there are two distinct positions here. We could have waived as a technical matter the time frame for a motion to reconsider, but that would be independent of what the federal rules require. Let's assume for the moment that this was served in 28 days, and then the next day he filed and filed a notice of appeal. That would be timely, but he didn't do that, and so if you accept arguendo that the failure to object under Rule 59 would somehow affect the timeliness of that motion, the fact remains undisputed that the motion was never filed. And so under the authority of Judge LaValle's opinion in Weitzner, the appeal is untimely. There are two distinct time periods, two distinct analyses for two distinct time periods, and here's the reason why I think this could lead to potentially absurd results. Realistically, we couldn't possibly know in advance whether or not Mr. Malik was or was not going to take an appeal from Judge Gujarati's dismissal motion. That happened long after the 30 days had run. So insofar as the rule could possibly know, because you were served the motion for reconsideration, so you can't really say that you didn't understand that he was filing a motion for reconsideration, which is something that would normally toll the time to file an appeal. No, no, but he didn't file that, Your Honor. And so for purposes of the counting of the days for appeal So you're saying the district court dismissed it, he serves on you a motion for reconsideration, and you say, well, he's complying with the district court's funding rules, which means he didn't meet the 28-day deadline, so he must not be interested in appealing. Is that what you're saying? No, Your Honor. But what would we have done? There was nothing from which we could voice an objection to an appeal. A notice of appeal had not been filed as of that point in time and wasn't for many months thereafter. It would be a surreal requirement if an adversary is required to object to the hypothetical potential in the future of a litigant filing an appeal months after the permissive deadline. I think that puts a burden on You're saying you didn't have an opportunity to object to the late filing of the notice of appeal. That's correct. No, no, no. Yes. He filed a motion to dismiss the appeal, so that's the way he would have done it. We did, Your Honor. That's exactly what we did here. Yes. Do you want to maybe address opposing counsel's argument that actually the district court misunderstood what he thought was misleading, that it's the lack of specificity as to the rates and so on as opposed to the growth cap rate and the monthly charges? Your Honor, Judge Gujarati's opinion and the record before her could not have been clearer. My friend, with all due respect, has thrown a lot of spaghetti on the wall in an effort to avoid the implications of what Judge Gujarati has done. But with respect, he answered Your Honor's question about what he was misled by and that he was never guaranteed that it would be 12 percent or he didn't understand it that way. That isn't what he alleged. If you take a look at paragraph 42 of his complaint, he specifically alleges that Mr. Feigenbaum lied to him by claiming that the interest earned on the three aspects of this that Judge Gujarati focused on in terms of granting dismissal. Number one is the premium charge. He claims he didn't know that there would be a 6 percent premium charge tacked on to his premium payment. That was disclosed to him in the policy, which is A-156 and A-166. It was disclosed to him in the policy and it was disclosed to him in the illustration with which he was provided before the policy at A-118. I think I understand this argument and it's what the district court said. You're going to say then it's the monthly charges and the growth cap rate and that was disclosed in the documents at an earlier time. Correct. I guess you're saying he did not make the argument that opposing counsel now says on appeal that it's not about those particular figures, it's about the specificity of the case.  So you're saying that he had a complaint that didn't allow him to understand that actually he was getting a worse deal than under his previous policy. So I guess I'm asking to assume, let's put aside whether he put it in the complaint or not, if that in fact was his argument, what would be your response to that? Why wouldn't that prevail? I have two arguments here, Your Honor. First, that isn't what he alleged. I get that. And it isn't what he was arguing, what he argued. Okay. And that's brand new in this court. But the answer to that question is the fact a reasonable insurance purchaser seeing this information month after month after month and at the outset could have come to the conclusions comparing my old policy with my new policy. That's what a reasonable person could do. And as Judge Gujarati noted in her opinion, he knew all of this. He knew all of this. And there was a telephone number that had been supplied by Equitable for people who have questions about their policy. There's no allegation other than at the very end that he took advantage of using that phone number to call and ask a question. If you were a reasonable purchaser of an insurance policy and you saw that you were being charged 6 percent on a premium or you were getting monthly charges withheld or you had a growth cap rate that you claim was promised to you, and then in the second year of the policy, the percentage went down, it devolves on you if you cared rather than taking a litigation position many years later to pick up the phone. And you had that opportunity. So the notion that somehow there was a deception that he couldn't do this with all due respect is, well, it's just not credible and it's not alleged, Your Honors. Okay. I think we have that argument. Do you want to make one final point? The only point I was going to make, and it's important vis-a-vis the standard of review, obviously the standard of review on reconsideration is much, much more stringent. And so my friend here has to prove extraordinary circumstances basically or a very high burden, as I know this Court has written many, many times, about why Judge Gujarati abused her discretion in not granting reconsideration. Now, we're hampered a bit because we haven't been — this issue hasn't been briefed, so we don't really know in this Court what arguments counsel from Mr. Malik is making to say that that burden hasn't been met here. But we think — You're saying if we conclude that we can review the denial of the motion for reconsideration but not the order of dismissal. That's correct. If you could — we believe, Judge Manasseh — The standard would be different, I think. It would. But you don't have to get to that because when you review the notice of appeal, when you review the docket statement, the Form C — Right. He doesn't say he's appealing the denial of the motion for reconsideration but mentions it to explain why the deadline would be later. Correct. Which is exactly what this Court in the Persico case on exactly the same language, albeit in a summary order, but having had the benefit of this Court's recent opinions on the utility of summary orders, I'm confident that perhaps you will take a gander at that. That the — that Court, and also the Tenth Circuit Court of Appeals in the Akers case on which Judge — then-Judge, now-Justice Borsig sat, came to the same conclusion on a motion for reconsideration on exactly the same facts that we have here. Okay. I think we have that argument. I thank Your Honors for giving me the additional time. Thank you very much, Mr. Kassner. Let's turn to the next appellee, Mr. Kirst. Good morning, Your Honors. Scott Fuerst, Secundus Ference-Carmel for the appellee, Mr. Feigenbaum. We've obviously joined in so much of the motion to dismiss as equitable has briefed, as well as all of those claims where there was an overlap in terms of the assertion of claims against both equitable and Mr. Feigenbaum. And I'll refer the Court, of course, to those briefings. Really, there's very little for me to recap that hasn't already been extensively addressed by the parties. On the subject of the timeliness of appeal, I think somewhat stated differently, the procedural facts, the dates, the chronology of events are in dispute. I think Your Honor has repeatedly correctly identified in different language if the Court wanted to have a standard that did not require filing, that required service, of course, it would have done so. This is not a rare occasion within the Eastern District. Your Honor's own 5.2.6 has a bundling rule as well, almost identical, and I think cites to the relevant authorities as well. I think what we have here is a classic occasion in which the appellant is endeavoring to expand using verbiage that's not in the underlying rule and advisory opinion and then frame it in a disjunctive way. You can do one or the other. Of course, that's not what the rule says. And I do think it forecloses, frankly, the appeal in its entirety. On the merits, we think the Court should obviously affirm the underlying district court's order dismissing for statute of limitations purposes the contract, the unjust enrichment, the GBL 349, the insurance law section 4226 claims as all untimely as well as the unjust enrichment claim, and, of course, the RICO claim based on the fact that it failed to plead adequately. Multiple aspects of a RICO claim from the enterprise elements to the pattern of racketeering activity. And, of course, insofar as all of the claims were ultimately dismissed against Mr. Malik in his individual capacity, there are no surviving claims for purposes of the recitation to the unfair practices statutes of the other statutes of the other States, so those are not tenable. Briefly, the only claim that's asserted against Mr. Fagenbaum in his individual capacity is the unjust enrichment claim. Is that duplicative of the GBL claim necessarily? Like, if you were to allow that to proceed, could you pursue a GBL claim and an unjust enrichment claim in the alternative? Well, it's an interesting thing. First of all, I think it's worth noting, as the Court, I think, has been presented in a number of moments during today's arguments, that really there's a very small set of competent and capable of consideration facts that are kind of indistinguishable across almost all of the claims. And so in this particular instance, I think that the GBL claims, which, of course, were dismissed because they were in excess of the three-year statute of limitation period, I don't think the unjust enrichment claim would stand in any event, because the underlying claims are premised upon, ultimately, the policy purchase in March of 2011, the disclosure that went out contemporaneously therewith, and each of the other statements that went on. Kind of dovetailing on Mr. Craster's comments about what is essentially this extraneous outside of the actual underlying record effort on, during argument by Appellant's counsel, I think what we're dealing with here are attempts to divine additional facts that aren't actually articulated anywhere in the complaint about, well, what if the underlying disclosures that were made in each of the annual statements year after year after year didn't reveal this aspect of it? Or what if the formula, not just the changes that were inconsistent with the materials that were presented both at the time of consideration of the claimant and ultimately at the time of acceptance of the replacement policies, what if those formulas weren't readily apparent so we could do our own due diligence and corroborate the math presenting the change, the disclosable fact that set everybody on notice to say, wait a minute, that doesn't reconcile with what I was told. Every one of those events that occurred happened years and years before the 2020 commencement of this underlying action. So no matter how you get there, you are untimely. You mean the formulas were disclosed? I believe the argument that counsel made was that the variations in performance, the changes in fees, the very data points one might look to for purposes of saying reconcile with what I understood I was getting in March of 2011. They want you to look past that event that put them on actual notice, and they want to say, well, what about if the formulas didn't put Mr. Malik in a position where he could understand them? But as the judge correctly identified in the underlying district court order, there's no record of him ever doing anything year after year upon receipt of any of those things. One other point I would just note. What you're saying is even if maybe the first annual statement didn't put him on notice of something like the formulas or the performance, that if he got a series of them, that that would? Is that your point? No. I'm saying that what was being presented by Appellant's counsel was that under the guise of a qualitative disclosure, because no one would be, Mr. Malik ostensibly was unable to find the formula that would allege, that would allow him to determine the bona fides of why things were changing, that that itself is some proof of a concealment of a fact. That's raised in some of their briefing, not in the underlying pleading itself, of course. What it does is simply skirt around the fact that they had actual notice, and there's no dispute about the fact that they were receiving the policy statements annually as a function of the underlying policy purchase, and that there was disclosure of the changes therein. There is nothing in the actual record or in the pleading said that they endeavored that, excuse me, Mr. Malik endeavored to do anything with that information. And that is exactly cited in a number of the passages, including on page 3 of the underlying district court order, and, of course, some of the other related ancillary claim arguments that are made for purposes of an attempt to extend those statute of limitations are addressed in footnotes 7 and 10 of the underlying district court order. And on that basis, we think the Court should affirm and they should not appeal in its entirety. Roberts. Okay. Thank you very much, Mr. First. We'll turn back to Mr. Frank on rebuttal. Thank you, Your Honor. I just want to quickly highlight, I think, where the opposing parties really seem to disagree is, you know, my esteemed co-counsel said the word guarantee. He said loudly three or four times that he said he was guaranteed this 12 percent and, therefore, looking at the annual statements, he should have known that guarantee wasn't there. And, again, I have to direct the Court to the actual language in Plaintiff's complaint, which says that the rate could be 12 percent. And the reason that my opposing counsel has so vociferously insisted that could be means guarantee is because their entire argument about looking at the account statements giving you the answer is constructive. That we invite the Court to actually look at the account statements that are provided, to actually look at the arguments that they've made. They don't actually say, if you take this number and you see that the 8 percent is in that number. And the reason for that is because you can't. Because the real issue that is the gravamon of Plaintiff's complaint isn't about these financial differences in the crediting rate that, if it was what it was about, you know, might have been apparent in the annual statements. The gravamon of the complaint is these imperfections in the policy that reduced its overall value in spite of whatever numbers that they were being put in front of them. And so the really was. And what is the way that that information was presented in the revised disclosure that put your client on notice in a way that he would not have been able to calculate from the information he got from the annual statements? Sure, Your Honor. So in terms of the potential that there was any incorrect math, I'll call it, the only facts that was revealed to them was that the policies had a potential for no value at all. And that the crediting rate as they understood it did not allow for that outcome. That the crediting rate, as they were told, would always be positive if there were market returns and would never be negative if, in fact, the S&P 500, you know, decreased. And so to this day, even though Plaintiff's argument is being cast as expecting a certain math that they didn't receive, really Plaintiff's argument is about the lower quality of the other policies and that there is a math question. But the opposing counsel was saying that you could understand that from the information you were getting in the annual statements or the policy document. And I guess what you're saying is, well, it wasn't until the revised disclosure that we understood there was a potential for no value at all, and that changed the way we understood the policy as a whole. Is that right? Yes, Your Honor. Okay. I think we have that argument. Thank you very much, Mr. Frank.